# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| B.B.I. DESIGN, INC., | |
| Plaintiff, | Civil Action No. |
| v. | 2:22-CV-224-RWS |
| GILMER COUNTY, GEORGIA, ET AL., | |
| Defendants. | |

# ORDER

This case comes before the Court on Defendants Gilmer County, Georgia, et al.'s Motion to Dismiss [Dkt. 3] and Plaintiff B.B.I. Design, Inc.'s Motion to Remand [Dkt. 8]. After reviewing the parties' briefings, the Court enters the following Order.

## BACKGROUND

### I.     Factual Background

On December 14, 2020, Plaintiff purchased Lot 13 in the Watersong subdivision of Gilmer County, with the intention to build a home on the property. The property is adjacent to East Mountaintown Creek, which has been designated a trout stream pursuant to the Georgia Water Quality Control Act.

On January 19, 2021, Chastain & Associates, P.C. prepared a site plan of the property, which identified a line of wrested vegetation along the creek. That line serves as the starting point for the fifty-foot buffer area in which land disturbing activities are prohibited under the Gilmer County Soil Erosion, Sedimentation, and Pollution Control Ordinance (the "Ordinance"). Following the site plan and the line of wrested vegetation, Chastain & Associates, P.C. decided where to build the home on the property to ensure compliance with the Georgia Water Quality Control Act and other relevant laws and regulations.

On April 7, 2021, Plaintiff obtained a building permit for the home and thereafter began construction on it. On August 26, 2021, it entered into a contract for sale of the property, intending to close on April 15, 2022.

Sometime later, Gilmer County asked Chastain & Associates, P.C. to survey the property. On January 22, 2022, Chastain & Associates, P.C. did so, concluding that ninety-eight (98) square feet of the home being built and one support post for the home's porch were located in the buffer area in violation of a local ordinance. Accordingly, on February 9, 2022, Gilmer County issued a Stop Work Order to Plaintiff, prohibiting it from performing any work on the property except remedial work and instructing it to contact Gilmer County Planning & Zoning for compliance information. Then, on February 18, 2022, Plaintiff received a Notice

of Violation from Gilmer County alleging that it had violated the Ordinance (and its corresponding state law Georgia Erosion and Sedimentation Act) in four different respects, namely by building a structure in and disturbing the buffer. The Notice gave a compliance deadline of March 18, 2022, which Plaintiff worked to meet.

On March 30, 2022, Gilmer County officials inspected the property. On April 11, 2022, Plaintiff received a letter from Gilmer County's attorney, informing it that it had not fully remedied the alleged violations. The letter also notified Plaintiff that it was subject to a fine of $787,500 and that Gilmer County did not have the authority to grant a variance as to the structure being built in the buffer.

The parties worked to resolve the issue informally. On June 27, 2022, Plaintiff received an email stating that: (1) it was still subject to a $300,000 fine and (2) it was allowed to keep the structure on the property in the buffer zone but could not conduct any future land-disturbing activities in the buffer zone. Plaintiff contends that, despite the Stop Work Order remaining in effect and the Notice of Violation remaining unresolved, it has not been given any ability to challenge Gilmer County's accusations in court.

## II.     Procedural History

On October 6, 2022, Plaintiff filed suit against Gilmer County and various government officials in the Superior Court of Gilmer County, asserting claims under 42 U.S.C. § 1983 and seeking declaratory relief and an injunction under a recent amendment to the Georgia Constitution, Ga. Const. Art. I, § 2, ¶ V [Dkt. 1-1].  In particular, it asserted claims for: declaratory judgment under state law against Defendant Gilmer County (Count One); injunctive relief under state law against Defendant Gilmer County (Count Two); deprivation of civil rights under 42 U.S.C. § 1983 against all Defendants (Count Three); and attorney's fees and litigation expenses (Count Four).  On November 9, 2022, Defendants removed the case to this Court [Dkt. 1].  The same day, Defendants filed their Answer [Dkt. 2] and Motion to Dismiss [Dkt. 3].  Plaintiff opposed Defendants' Motion to Dismiss [Dkt. 5], and Defendants filed a reply in support [Dkt. 7].

Then, on December 9, 2022, Plaintiff filed the instant Motion to Remand, arguing that this Court lacks subject matter jurisdiction over its state law claims [Dkt. 8].  Plaintiff also asks the Court to order Defendants to pay all costs and attorneys' fees incurred as a result of the removal.  Defendants opposed the Motion on December 15, 2022 [Dkt. 9].  Plaintiff did not file a reply brief.

## DISCUSSION

The Court will first discuss Plaintiff's Motion to Remand because, if granted in full, there is no need to discuss Defendants' Motion to Dismiss. If necessary, the Court will then turn to Defendants' Motion to Dismiss.

## I.      Motion to Remand

### A.     Legal Standard

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Subject matter jurisdiction in a federal court may be based upon federal question jurisdiction or diversity jurisdiction." Walker v. Sun Trust Bank of Thomasville, Ga., 363 F. App'x. 11, 15 (11th Cir. 2010) (citations omitted). However, "[i]f at any time before final judgment it appears that the district court lack subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Notwithstanding these principles, courts must construe removal statutes narrowly. Bussey v. Crossroad Props. A, Inc., 2021 WL 9699731, at *2 (N.D. Ga. Aug. 23, 2021) (citation omitted). "There is a presumption against the exercise of

federal jurisdiction, and uncertainties as to removal are resolved in favor of remand." Id. (citations and quotations omitted); see also, e.g., Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing . . . removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); Beasley Forest Prods., Inc. v. N. Clearing, Inc., 515 F. Supp. 3d 1367, 1376 (S.D. Ga. 2021) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff.") (citation and quotations omitted).

    **B.**    **Analysis**

Plaintiff asks the Court to remand this case, because it contends that the Court lacks subject matter jurisdiction over its request for declaratory relief and an injunction pursuant to the 2020 amendment to the Georgia Constitution. [Dkt. 8-1 – Mot. to Remand, at 8-9]. In particular, Ga. Const. Art. I, § 2, ¶ V (b)(1) states:

> Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or municipality of this state or

>officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

Plaintiff focuses on the first sentence of that amendment, which waives sovereign immunity *for actions in the superior court* and contends that such language effectively divests this Court of subject matter jurisdiction since Defendants will be able to raise the sovereign immunity defense here. [Id.]. Defendants disagree, contending that by removing the case against them to federal court, they have waived the superior court limitation of the constitutional amendment. [Dkt. 9 – Opp. Br., at 3]. Alternatively, if the Court finds that it does not have jurisdiction over Plaintiff's state law claims, Defendants argue that "the proper remedy is to sever the state law claims and remand them to superior court and leave the federal law claim pending in this Court." [Id.].

First, the Court notes that very few cases have interpreted and applied Ga. Const. Art. I, § 2, ¶ V (b)(1). This makes sense, given that it was only enacted a few years ago and only applies to actions that occurred on or after January 1, 2021.

The only case the Court has found that substantively discusses and engages with the amendment is Crisp v. Georgia, 2022 WL 3589673 (11th Cir. Aug. 23, 2022), which Plaintiff also cites. In Crisp, the district court dismissed the plaintiff's claims against state and county officials on the basis of sovereign immunity and Eleventh Amendment immunity. Id. at *2. The plaintiff appealed, arguing in relevant part that the recent constitutional amendment waived sovereign immunity. Id. at *3. The Eleventh Circuit rejected his argument, noting that none of the government defendants "consented to be sued here." Id. (citations omitted). Moreover, the Court concluded that "[s]ince [plaintiff] did not bring this suit in the state superior court, and since the challenged acts all predate January 1, 2021, the amendment does not waive sovereign immunity or Eleventh Amendment immunity here." Id.

The Court is not convinced that Crisp provides a definitive answer to the issue raised here. For one, it is an Eleventh Circuit case interpreting a Georgia constitutional amendment before Georgia courts have interpreted it in the first instance. As such, it is not binding precedent that this Court is bound to follow and apply. Even if it were, though, it is not obvious that it would clearly apply here. As Defendants argue, that case was filed in federal court and says nothing at all about removal from superior court to federal court and how that procedural posture

would affect the application of the amendment.  Finally, the court's commentary about plaintiff not bringing the case in superior court could reasonably be construed as dicta, since his suit predated the amendment's enforcement date and the amendment therefore would not have applied no matter what court he filed the suit in.

Given these facts, the Court turns to other Georgia case law involving asserted waivers of sovereign immunity, and it finds several cases to be instructive. First, in Stroud v. McIntosh, the Eleventh Circuit addressed the question of "whether a state waives its sovereign immunity from suit and whether it waives its immunity from liability when it removes [a case from superior court to federal court]." 722 F.3d 1294, 1297 (11th Cir. 2013).  The court conducted a lengthy analysis of the applicable law, most notably the Supreme Court's opinion in Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002).  In so doing, it concluded that:

> [Un]der Lapides's reasoning, a state waives its immunity from a federal forum when it removes a case, which voluntarily invokes the jurisdiction of that federal forum. But nothing in Lapides suggests that a state waives any defense it would have enjoyed in state court—including immunity from liability for particular claims.  Lapides specifies that it is addressing only immunity to a federal forum. . . .  In fact, the opinion distinguishes this immunity against federal court proceedings from a state's underlying sovereign immunity—implying that its

9

> discussion of immunity from federal court does not address other aspects of sovereign immunity, including a state's immunity from liability.

Id. at 1302 (citation omitted). Put another way, "a state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts." Id. at 1301.

Hagan v. Ward recently built on these principles. In Hagan, the plaintiff filed suit against government defendants in superior court, and the defendants removed the case to the Middle District of Georgia. 2022 WL 1632158, at *1 (M.D. Ga. May 23, 2022). The defendants moved for judgment on the pleadings based on a variety of immunities, to which the plaintiff responded that the defendants waived any applicable immunities by removing the case from superior court to federal court. Id. at *1, 3. Citing Stroud, the court rejected plaintiff's argument. Id. at *4. It noted that the defendants' removal of the case to federal court "waived its Eleventh Amendment immunity from suit in federal court" but "did not affect [their] immunity from liability for monetary damages." Id. (citations and quotations omitted). Accordingly, it held that "Plaintiff's assertion

10

that [the defendants] waived [their] immunity from liability by removing this action to federal court is easily and soundly rejected."[1]  Id.

The Court agrees with the reasoning in these cases and applies their holdings here.  Defendants' removal of Plaintiff's case from superior court to this Court did not waive the superior court limitation of the constitutional amendment (or Defendants' entitlement to sovereign immunity), and the Court does not have jurisdiction over Plaintiff's state law claims.  The Court appreciates that Defendants believe that, by removing this case against them, they did waive their right to assert the defense of sovereign immunity, but it cannot just take their word for it.

Now that the Court has concluded that it does not have jurisdiction over Plaintiff's state law claims and must remand them to superior court, it must address Defendants' position that it should sever and remand the state law claims but leave the federal law claim pending here.  Plaintiff did not reply to this argument.

---

[1] This Court has reached the same conclusion.  See Williams v. Hill, 2022 WL 1715212, at *3 (N.D. Ga. Mar. 31, 2022) ("The Eleventh Circuit Court of Appeals has confirmed that a state's immunity from *suit* in federal court is a distinct concept from a state's immunity from *liability*.  Removing a case to federal court waives a state's immunity from the federal forum.  Removal, however, does not mean that a state waives any defense it would have enjoyed in state court—including immunity from liability for particular claims.") (citations, emphasis, and quotations omitted).

11

After a review of the relevant case law, it is clear that federal courts cannot decline jurisdiction over well-pleaded federal law claims that were properly removed from state to federal court. See, e.g., In re City of Mobile, 75 F.3d 605, 606, 608 (11th Cir. 1996) ("the district court must retain jurisdiction over the properly removed federal claim" even where the remanded state law claims "substantially predominate over federal claims"); Hill v. City of Atlanta, 2015 WL 13807615, at *2 (N.D. Ga. July 6, 2015) (declining to remand properly-removed federal claims); Cook v. Randolph Cnty, Ga., 2007 WL 9751893, at *1 (M.D. Ga. Feb. 2, 2007) ("Plaintiff's Complaint includes numerous causes of action that arise under federal law.  It is clear that this Court has jurisdiction over those claims. Moreover, it would be error to refuse to exercise jurisdiction over those claims. Accordingly, remand of the entire action is not warranted.") (citation omitted).

As a result, the Court **GRANTS** Plaintiff's Motion to Remand as to his state law claims only (Counts One and Two), and it severs and remands those state law claims but retains jurisdiction over Plaintiff's federal law claims (Counts Three and Four).

**II.     Motion to Dismiss**

   **A.     Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 127 S. Ct. at 1974). A claim to relief is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coco-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 127 S. Ct. at 1965.

### B.  Analysis

Having concluded that two of Plaintiff's claims—those for declaratory judgment and injunctive relief against Defendant Gilmer County (Counts One and Two)—must be remanded to state court, the Court need only evaluate Defendants' motion to dismiss the remaining two claims for deprivation of civil rights under 42 U.S.C. § 1983 and attorney's fees and litigation expenses against all Defendants (Counts Three and Four).

"To state a claim under § 1983 for denial of procedural due process, a claimant must allege (1) deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." 6420 Roswell Rd., Inc. v. City of Sandy Springs, Ga., 484 F. Supp. 3d 1321, 1333 (N.D. Ga. 2020) (citation and quotations omitted). "The deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Id. (citations, punctuation, and quotations omitted).  "A procedural due process violation is therefore not complete unless and

14

until the State fails to provide due process." Id. (citation and quotations omitted). "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." Id. (citation and quotations omitted).

Defendants do not challenge the first or second elements of Plaintiff's procedural due process claim at this stage. [Dkt. 3 – Mot. to Dismiss, at 30]. Therefore, the question remaining before the Court is whether Plaintiff has sufficiently alleged the third element: constitutionally inadequate process. "To determine whether the state's process was constitutionally inadequate, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." 6420 Roswell Rd., Inc., 484 F. Supp. 3d at 1333 (citation and quotations omitted). "In doing so, the Court considers several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (citation and quotations omitted). "In applying this test, the Supreme Court usually has held that the Constitution requires some kind of a hearing *before* the

15

State deprives a person of liberty or process." Id. (citations and quotations omitted) (emphasis in original).  In certain extraordinary situations, however, "a post-deprivation remedy satisfies due process." Id. at 1334 (citation omitted).

The parties spend much of their briefing arguing over whether the Ordinance afforded Plaintiff a procedural mechanism by which to challenge the Stop Work Order that Gilmer County issued and the fine or citation that it imposed.  The Court need not decide that issue, though, because it finds that Plaintiff had access to a remedy in state court and it has not shown that the state law remedy would have been insufficient to satisfy due process.  In particular, "Georgia law provides that a party may seek a writ of mandamus when no other specific legal remedy is available and a party has a clear legal right to have a certain act performed." Cochran v. Collins, 253 F. Supp. 2d 1295, 1305 (N.D. Ga. 2003) (citing O.C.G.A. § 9-6-20); see also Cotton v. Jackson, 216 F.3d 1328, 1332 (11th Cir. 2000) ("Just because under Georgia law certiorari will not lie does not mean that there were no adequate state procedures available to Plaintiff.  We will assume that Plaintiff is correct in arguing that no other specific legal remedies are available to him.  In these circumstances, we believe that Plaintiff would be entitled to seek a writ of mandamus") (citation omitted).  "This procedure can be used to compel a

governmental body to act in compliance with the law, for instance to require a governmental board to hold a hearing as provided by law." Id. (citation omitted).

In this case, if Defendants had deprived Plaintiff of procedural due process in the course of their communications and interactions, Plaintiff could have sought a writ of mandamus to attain a hearing in order to remedy that deprivation or loss. But there is no evidence that Plaintiff sought such a remedy. Nor did Plaintiff mention the remedy in its opposition brief or seek leave to respond to Defendants' reply brief when Defendants raised that same point. Therefore, his procedural due process claim is barred. Id. (citation omitted).

Accordingly, Defendants' Motion to Dismiss Plaintiff's federal procedural due process claim is **GRANTED**. And since there is no longer a substantive claim pending in this case, Defendant's Motion to Dismiss Plaintiff's attorneys' fees and litigation expenses claim is likewise **GRANTED**.[2]

## CONCLUSION

For the foregoing reasons, Plaintiff B.B.I. Design, Inc.'s Motion to Remand [Dkt. 8] is **GRANTED** as to Plaintiff's state law claims (Counts One and Two) but **DENIED** as to Plaintiff's federal law claims (Counts Three and Four). The Clerk

---

[2] See Brilliant Alts., Inc. v. Feed Mgmt. Sys., Inc., 2012 WL 3230388, at *2 (N.D. Ga. Aug. 6, 2012) ("As well, because all of Plaintiffs' claims have been dismissed, Plaintiffs' derivative [] punitive damages[] and attorney's fees claims are also dismissed.").

17

is ordered to remand the state law claims in this case (Counts One and Two) to the Superior Court of Gilmer County.  The Court declines to order Defendants to pay all costs and attorneys' fees incurred as a result of the removal.

In addition, Defendants Gilmer County, Georgia, et al.'s Motion to Dismiss [Dkt. 3] is **GRANTED** as to Plaintiff's federal law claims (Counts Three and Four).  The Clerk is ordered to terminate these claims and to close this case.

**SO ORDERED** this 13th day of February, 2023.

_____
**RICHARD W. STORY**
United States District Judge